97 F.3d 1453
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Louis WHITE, Defendant-Appellant.
 No. 95-1854.
 United States Court of Appeals, Sixth Circuit.
 Sept. 17, 1996.
 
 Before: MERRITT, Chief Judge; WELLFORD and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Louis White was convicted on one count of aiding and abetting an attempt to possess with intent to distribute cocaine and was sentenced to 72 months in prison pursuant to 18 U.S.C. § 841, 846. White now appeals that conviction, claiming that evidence showing his mere presence at the scene and his guilty knowledge of the crime is insufficient to convict him. We AFFIRM.
 
 
 2
 On February 4, 1993, Ray Smith, an alleged coconspirator with White, met with undercover Drug Enforcement Administration ("DEA") agent Richard Crock near an Omni Hotel in Detroit to discuss a large-scale cocaine transaction.[1] According to the government's evidence, Smith and White arrived at the hotel in a white Oldsmobile sedan registered in White's name. The two checked into the hotel under White's name and paid for the room in cash. After their arrival, Smith called Crock, and two undercover DEA agents went to White's room, where defendant himself admitted them. Smith then left the room with the agents to meet Crock and discussed the purchase of several kilograms of cocaine. White admitted Smith and the agents, upon their return. At some point after that meeting, Crock spoke to Smith by telephone to "lay[ ] the ground work to introduce [undercover agent Albert] Ornelas" to Smith.[2]
 
 
 3
 A month later, Smith met with Ornelas at a Big Boy restaurant in Detroit to discuss the purchase of two kilograms of cocaine. Smith was, once again, accompanied by White at that meeting. Ornelas complained about being surprised by the presence of White, and Smith explained that White was his bodyguard, who proceed to sit nearby. After Smith and Ornelas had finished their discussions, Smith and White left together in White's car.
 
 
 4
 In accordance with their earlier discussions, Smith and Ornelas planned to exchange about $42,000 for two kilograms of cocaine at the Big Boy restaurant. When Smith failed to arrive at the appointed time, however, Ornelas left the restaurant. Shortly thereafter White's car arrived at that location. White emerged from the passenger's side of the car and walked into a nearby store. Another occupant of White's car got out of the back seat and took something out of the trunk. Later, White returned to the car, picked up the occupant, and drove away.
 
 
 5
 Smith and Ornelas agreed to attempt to meet again to complete the transaction a week later. On that day, once again White drove his car to the restaurant and Smith accompanied him in the passenger seat. Smith rolled down his window, and Ornelas approached his side of the car. Ornelas testified that he asked Smith if he was ready "to do business," and asked Smith "if he had brought the money." Smith then showed Ornelas a camera case full of money. At that point, Ornelas signalled a team of law enforcement officials to arrest Smith and White.[3] At the time of the arrest, White's car was found to be equipped with hand controls that enabled Smith, who was disabled, to operate the car.
 
 
 6
 White was charged in count one with conspiring to distribute cocaine, and in count two with aiding and abetting Smith in attempted possession with intent to distribute cocaine. White was convicted by a jury on count two,[4] and sentenced. He filed this timely notice of appeal.
 
 
 7
 This court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court must view the evidence in a light most favorable to the government, and all reasonable inferences must be drawn in the government's favor. See United States v. Garcia, 866 F.2d 147, 152 (6th Cir.1989).
 
 
 8
 White argues that he cannot lawfully be convicted of the crime charged because the "mere presence at the scene of the crime and guilty knowledge of the crime are not enough to convict a defendant of aiding and abetting." Citing United States v. Head, 927 F.2d 1361, 1373 (6th Cir.1991); United States v. Winston, 687 F.2d 832, 835 (6th Cir.1982); United States v. Bryant, 461 F.2d 912, 921 (6th Cir.1982)). He claims that the government must show that he acted with the specific intent to facilitate the commission of Smith's crime. Further, he claims that the government must show that he shared Smith's criminal intent and that he committed an overt act intending to assist Smith in the success of the venture. He also argues that
 
 
 9
 [t]here was no testimony from which it could even be inferred that White knew that cocaine was going to be sold that day and that he was driving Ray Smith out to Metro Airport with the intent to help Smith get to a place where he could purchase cocaine.
 
 
 10
 White's argument is unpersuasive. The government correctly asserts that it need only show that White "associated himself with, and in some sense attempted to help bring about, the result sought." See United States v. Garcia, 866 F.2d 147, 152 (6th Cir.1989). White's alleged intent to assist Smith is "readily discernible" from the evidence. Under similar circumstances, the First Circuit has rejected the argument of a defendant who accompanied the principal actor to complete a drug transaction. United States v. Ortiz, 966 F.2d 707, 712 (1st Cir.1992), cert. denied, 506 U.S. 1063 (1993). Ortiz noted that, while the principal dealer purposefully brought the defendant with him to consummate a drug deal, the defendant willingly accompanied him. The court recognized that "the line that separates mere presence from culpable presence is a thin one, often difficult to plot." Id. at 712. We agree with Ortiz that "[j]urors can be assumed to know that criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before larger-than-necessary audiences." Id.
 
 
 11
 While guilty knowledge and the presence at the scene of a crime alone may not be sufficient, the evidence in this case shows some active participation and a willingness on the part of White to assist Smith in this drug deal. This is not a case where White was merely a passenger who was not involved. See United States v. Pena, 983 F.2d 71, 72-73 (6th Cir.1993) (reversing conviction because defendant was merely a passenger of the car and had only a "generalized belief" that something illegal was going on). Rather, the jury could reasonably infer from the evidence that White helped Smith by providing him protection as a bodyguard. White drove Smith to the crime scene several times in his own car, clearly helping Smith in his endeavor. His presence, under the circumstances, was more than fortuitous. "Upon repetition, at some point passive presence transforms into presence pregnant with meaning and can be rationally perceived by a jury as not 'mere presence,' but 'significant presence.' It is for the jury to determine the full implications of that significance." United States v. Fisher, 992 F.2d 1218, 1222 (6th Cir.1993) (unpublished) (emphasis added). We are satisfied that there was sufficient evidence, together with reasonable inferences, for White's conviction.
 
 
 12
 We AFFIRM the conviction of White.
 
 
 
 [1]
 Defendant White is Smith's friend and a family friend as well
 
 
 [2]
 To contradict the evidence that White was at the February meeting, Smith testified at trial that White was not with him on that day, but that he merely used defendant White's car and name. The jury apparently rejected that testimony
 
 
 [3]
 Another of Smith's coconspirators, Keven Dorsey, had been following Smith and White in a Ford Explorer prior to the bust. When Smith and White were arrested, Dorsey attempted to escape and led the police on a high-speed chase. Dorsey was apprehended and arrested after he blew out a tire and crashed
 
 
 [4]
 The government eventually dismissed count one